(48 South. 537.)

No. 17,387.

STATE v. RYAN.

(Feb. 1, 1909.)

**1.** Criminal Law (§ 720*) — Argument of Counsel.

The remarks of the district attorney to the jury complained of by the accused were within the limits of legitimate argument.

[Ed. Note.—For other cases, see Criminal Law, Dec. Dig. § 720.*]

**2.** Criminal Law (§ 457*)—Opinion Evidence —Intoxication.

Testimony given by the accused in his own behalf that at the time he had made certain statements "he was drunk or under the influence of dope" can be disproved by the testimony of "nonexpert" witnesses.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 1046; Dec. Dig. § 457.*]

**3.** Criminal Law (§ 829*) — Requested Instruction Covered by Instructions Given.

The refusal of the district judge to give a certain special charge, which he was requested to give to the jury on the ground that "several paragraphs of that charge were contrary to law" and because the general charge covered the law of the case, was not reversible error.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2011; Dec. Dig. § 829.*]

**4.** Criminal Law (§§ 913, 972*)—New Trial —Newly Discovered Evidence—Motion in Arrest—Grounds.

The application of the accused for a new trial was not well grounded. The defendant was indicted under section 832, Rev. St., as amend-

ed by Act No. 72, p. 95, of the Acts of 1898, charging him with receiving and having money that had been feloniously taken, stolen, embezzled, or by false pretenses obtained from any other person, knowing the same to have been stolen. The reason assigned for a new trial was that the person from whom the evidence showed defendant had received the money had been himself tried on the same charge as the defendant before the district court for Calcasieu and had been acquitted, and therefore defendant should by reason of that fact be also acquitted. The court held that the acquittal of that party did not affect the case. The parties were tried before different juries. Case differentiated from State v. Antoine, 42 La. Ann. 945, 8 South. 529.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. § 2423; Dec. Dig. §§ 913, 972.*]

(Syllabus by the Court.)

Appeal from Fifteenth Judicial District Court, Parish of Calcasieu; Edmund Dennis Miller, Judge.

Kaye Ryan was convicted of receiving stolen money, and he appeals. Affirmed.

Mitchell & Rosenthal, for appellant. Walter Guion, Atty. Gen., and Joseph Moore, Dist. Atty. (Leland Hugh Moss and Ruffin Golson Pleasant, of counsel), for the State.

Statement of the Case.

NICHOLLS, J. The indictment in this case charged that Kaye Ryan $50, in lawful money of the United States of America, of the value of $50 in said lawful money, of the property of George Look, then lately before feloniously stolen, taken, carried away, he, the said Kaye Ryan, then and there well knowing said money so to have been feloniously stolen, taken, and carried away, did then and there feloniously receive, conceal, and have, contrary to the form of the statute of the state of Louisiana in such cases made and provided, in contempt of the authority of the state, and against the peace and dignity of the same.

The prosecution in this case was based upon section 832 of the Revised Statutes of 1870, as amended by Act No. 72, p. 95, of the Acts of 1898. As so amended the section reads:

"Whoever shall receive, have or buy any goods, chattels, money or things of value, that shall have been feloniously taken, stolen, embezzled or by false pretenses obtained, from any other person, knowing the same to have been taken, stolen, embezzled or by false pretenses obtained shall suffer imprisonment with or without hard labor not exceeding two years. Whoever shall receive, harbor, or conceal any thief knowing him or her to be a thief, shall suffer imprisonment not exceeding one year."

Appellant's complaints of error are embodied in five bills of exceptions. From the first bill it appears that the state was permitted to establish by several witnesses that on the night when he is alleged to have made certain denials to the sheriff he was in apparent normal condition, and not, as he had testified to, that he was drunk and under the influence of dope at the time when he made such denials, and that counsel of accused objected to the testimony of said witnesses on the ground that they were not qualified either as physicians or experts, and could not testify, therefore, as to the mental condition of the accused. The court overruled the objection, assigned as a reason that it was permissible to allow witnesses, even though not experts or physicians, to testify as to the conduct and conditions of the mind and body of an accused at the time of his arrest as well as before an act; that in this case Ryan had made a confession, which had been admitted in evidence. As a witness in his own behalf he had testified that he had no recollection of having made such a confession, and that at the time he was drunk, or under the influence of "dope," and this testimony was to show that his mind was clear, and as a matter of fact that he was not drunk and had not been "doped." That it was a well-established rule that nonexpert witnesses may testify as to whether a man is drunk or sober. From bill of exception No. 2, it appears the district attorney in his argument to the jury stated—

"that it was common knowledge that in many parts of the country, particularly in New York, there were many criminals, high in social and public life, being tried and convicted of crime, and that no doubt thousands of men could be produced to testify that previous to that time these men had spotless reputations,"

—to which objection was made by defendant's counsel, on the ground that these remarks were improper and calculated to bias and prejudice the minds of jurors and affect their verdict in a manner prejudicial to defendant. He asked the court, therefore, to discharge the jury. The court refused so to do, assigning as his reason that no possible injury could have been suffered by the accused on account of the language employed by the district attorney in making his illustration. Accused had offered evidence of his previous good character, and the district attorney was arguing as to the weight and effect to be given to proof of good character when met with convincing proof of guilt. The court instructed the jury to disregard the remarks of the district attorney. It did this, not because it thought the remarks prejudicial, but simply out of abundance of caution.

From the third bill of exception it appears that the court refused to give the following special charges to the jury:

"(1) Unless you believe beyond a reasonable doubt that the person from whom the goods are alleged to have been received was the thief, it is your duty to acquit.

"(2) Unless you believe beyond a reasonable doubt that the accused knew at the time he received the goods that the goods were stolen, it is your duty to acquit.

"(3) Receiving goods from one who himself had guiltily received goods from the thief is not receiving stolen goods.

"(4) One who receives goods though knowing them to be stolen is not guilty if his purpose is to return them to the owner, or merely to detect a thief.

"(5) In all cases, in order for the jury to convict, you must be convinced beyond a reasonable doubt that the accused knew at the time he received the goods that they were stolen, and that he knew that the person from whom he received the goods was the thief."

The court refused to give the special charges because the special charges contained many paragraphs which are contrary to law

and cannot be sustained by sound reason or authority. The charge by the court was given orally, and was taken down by a stenographer at the instance of counsel for the accused, and, although it was perhaps not as concise as if specially prepared in writing, it was not at all complained of, the only complaint being that the court refused to give the special charges.

Bill of exception No. 4, was taken to the refusal of the court to grant a new trial for the reason stated in the application for the same, which was on the ground of newly discovered evidence, and that the verdict of the jury was contrary to the law and the evidence. Appellant alleged in that application that he was tried and convicted on the 11th November, 1908, on the charge of receiving stolen money, knowing the same to be stolen, and it was proved and was a conceded fact that the defendant received the money from one Lee Carrier, and that the said Lee Carrier was subsequently tried and found not guilty; further, for the reason that the newly discovered evidence referred to was as follows:

"That Mrs. Warren Lovelace received one of the alleged stolen bills from either the Lake Charles National Bank of Lake Charles or the First National Bank of Lake Charles, and that the said Mrs. Lovelace gave the money to her niece, Miss Fanny Lovelace, who in turn gave it to Mr. Arthur Vatter, who in turn gave it to Mr. Fred McLeod, who in turn gave it to the First National Bank of Lake Charles, president of said bank being Capt. George Look, who is the same George Look from whom the money is alleged to have been stolen, and that the cashier of the First National Bank of Lake Charles asked the said Fred McLeod where he obtained the said bill, and at the same time informed him that the bill was one of the bills alleged to have been stolen from Capt. George Look on the night of September 17, 1908, nothing having been said during the trial of the said Kaye Ryan concerning the said bill that had turned up at the First National Bank in the manner aforesaid. That Lee Carrier was tried before the district court for Calcasieu on the same charge as the defendant Kaye Ryan, and the said Lee Carrier was acquitted; that unless the said Lee Carrier had stolen money in his possession, knowing the same to be stolen, that the said Kaye Ryan, the defendant, could have had knowledge that the said money was stolen, as he, the said Kaye Ryan, received the said money that he had in his possession from the said Lee Carrier."

The court overruled the motion for a new trial because the evidence fully sustained the verdict. The fact that Lee Carrier was not convicted does not affect the guilt of Kaye Ryan. A different jury sat upon the case of Lee Carrier from that that sat on the case of Ryan. It happens sometimes that the jury fails to appreciate the probative force and effect of evidence, and the case of Lee Carrier is one in point. The case against Kaye Ryan and Lee Carrier depended largely upon circumstantial evidence, and, while it is true that the evidence tended to show that the stolen property found in the possession of Kaye Ryan had come from Lee Carrier and that Lee Carrier was acquitted, that is no reason why Kaye Ryan cannot be held where the case is fully made out as to him. As regards the newly discovered evidence, the statement in the application for a new trial is substantially correct as to the transmission of the bill found to the several parties mentioned, and Mr. McLeod was not absolutely certain as to what Mr. North, the cashier, is positive—that he did not say that the bill in question was one of the stolen bills. Four $50 bills, together with other money, had been stolen from Capt. George Look. Two of them were traced into the possession of Lee Carrier, and he had turned one of these two bills over to the accused. Two other bills were never found, and the alleged newly discovered evidence relates to these two missing bills. The McLeod incident is at a period some time after the arrest of both accused parties. The four $50 bills stolen were gold certificates. Mr. North, upon receiving the $50 bill from Mr. McLeod, asked one of the tellers, in the presence of Mr. McLeod, to give him (Mr. North) the numbers of the four stolen bills, at the time telling Mr. McLeod why he (North) was doing so. The number of this bill however proved to be

entirely different. To this Mr. North swore positively, but even if this bill had been one of the Look notes that would not relieve Kaye Ryan of having in his possession one of the stolen bills, knowing it to be stolen property, and with the intent to deprive the owner of the same.

## Opinion.

Bill of exception No. 5 was reserved to the refusal by the trial judge to grant a motion in arrest of judgment. As the matters which were urged in support of that motion were not apparent on the face of the record, but required the introduction of evidence to establish them, it is unnecessary to discuss the bill. Motions of that character must be based upon matters apparent on the face of the record.

Bill No. 1. There was no error committed by the trial judge in permitting a nonexpert witness to testify that the defendant was not "drunk" or "under the influence of dope," as he had testified he was.

Jones on Evidence, vol. 2, § 362; Hennen's Digest, Title "Evidence," subd. 16, p. 569; State v. Marceaux, 50 La. Ann. 1142, 24 South. 611; State v. Lyons, 113 La. Ann. 973, 37 South. 890; Encyclopedia of Pleading & Practice, vol. 8, pp. 745, 746; State v. Smith, 106 La. Ann. 36, 30 South. 248; State v. Brown, 111 La. Ann. 170, 35 South. 501.

Bill No. 2. The district attorney in his remarks to the jury did not pass beyond the limit of legitimate arguments. Defendant had no ground of complaint. State v. Thompson, 109 La. Ann. 296, 33 South. 320; State v. Forbes, 111 La. Ann. 473, 35 South. 710; State v. Thomas, 111 La. Ann. 804, 35 South. 914; State v. Feazell, 116 La. Ann. 264, 40 South. 698.

Bill No. 3. The general charge of the judge covered the law of the case. He would not have been called upon to give an additional charge even had it been correct. Marr's Crim. Jurisp. p. 790. The trial judge's reason for refusing to give the special charge which was requested warranted his ruling.

Bill No. 4. We find no reversible error in the refusal of the court to grant a new trial. The fact that Lee Carrier from whom the defendant Ryan received the stolen money was acquitted (for aught we know, on different evidence) would furnish no reason why the defendant, who was convicted, as the trial judge declares, on full evidence of his guilt, under the statute, should be granted a new trial. The statute under which the present defendant was found guilty is different in its terms from that in the case of State v. Antoine, 42 La. Ann. 945, 8 South. 529. The accused and Carrier were tried under distinct indictments by different juries. Marr's Crim. Jurisp. p. 207, § 126; Murray v. Pontchartrain R. Co., 31 La. Ann. 491.

Bill No. 5. We have already said that the motion in arrest was properly refused, as it was based on reasons not apparent on the face of the record.

We find no ground for reversing the judgment. It is therefore affirmed.