996 So.2d 275 (2008)
STATE of Louisiana
v.
John J. KESTLE.
No. 2007-K-1573.
Supreme Court of Louisiana.
December 2, 2008.
James D. Caldwell, Attorney General, Paul D. Connick, Jr., District Attorney, Terry Michael Boudreaux, Laura Suzanne Schneidau, Desiree Marie Valenti, Assistant District Attorney's for applicant.
Regan & Associates, Martin Edward Regan, Jr., Karla M. Baker, New Orleans, John Hall Thomas, Benjamin Thomas Sanders, for respondent.
WEIMER, Justice.[1]
Writ was granted in this matter to clarify the extent to which the lay opinion testimony of a police officer regarding behavioral manifestations of narcotics intoxication *276 can pass sufficiency review in the context of a driving while intoxicated prosecution.
For reasons that follow, we reverse the ruling of the court of appeal and reinstate the trial court's determination that the police officer's testimony, when coupled with other evidence, was sufficient to support the conviction.

FACTS AND PROCEDURAL BACKGROUND
On the evening of October 12, 2004, Trooper Wayne Coates with the Louisiana State Police was dispatched to the scene of an accident on Interstate 10 in Metairie near the Bonnabel Boulevard exit. Upon arrival at the scene, the trooper found a truck on the side of the road with its left front tire deflated. Noting that the driver, John J. Kestle, who was sitting behind the wheel seemed intoxicated, the trooper advised him of his Miranda rights and questioned him about the crash. Defendant related that an unknown vehicle swerved into his lane causing him to strike the bridge railing.
The trooper then asked the driver to exit the vehicle. Although he did not detect an odor of alcohol or see any indication of alcohol use, the trooper conducted a field sobriety test. Defendant was unsteady on his feet and had to maintain contact with the vehicle in order to keep his balance. Defendant told the trooper he was tired from working ten hours, had disc problems, and his sandals prevented him from adequately performing tests on the gravel. In response to the trooper's question, defendant claimed to have had three beers, but denied taking any narcotics. Defendant's performance on the field sobriety test, captured on videotape entered into evidence, along with his behavior during the entire investigation indicated some form of extreme intoxication. An intoxilyzer test, administered while defendant was at lockup, confirmed there was no blood alcohol in his system. Defendant refused to submit to a urine test and was not asked to provide a blood sample.
Defendant was charged with reckless operation and driving while intoxicated. Following a bench trial, he was convicted of third offense DWI under LSA-R.S. 14:98 and sentenced to two and one-half years at hard labor, with all but thirty days suspended.
Defendant appealed, arguing that the evidence at trial was insufficient to prove that he was intoxicated because the State failed to prove he was under the influence of a scheduled narcotic. Defendant further argued that the arresting officer was not certified to determine whether he was under the influence of a narcotic and was not certified to articulate the type of narcotic under which he believed defendant to be impaired.
The court of appeal agreed, citing the Jackson v. Virginia[2] standard and noting the conviction in the instant case rested on circumstantial evidence. The court of appeal further found that the State was required to prove that the defendant in this case was under the influence of a controlled dangerous substance in accordance with LSA-R.S. 14:98(A)(1)(c) to convict him of third offense DWI. The court of appeal conceded the defendant's failure to pass field sobriety tests could be indicative of narcotics intoxication, acknowledged an officer's subjective opinion regarding narcotics intoxication was relevant, and noted defendant's refusal to submit to a chemical test could weight against him. However, the court of appeal found the trooper had no formal training in distinguishing between *277 alcohol and narcotic impairment, and his certification was limited to field sobriety tests and intoxilyzer use. Although the trooper believed the defendant was under the influence of a narcotic, he could not offer an opinion as to the specific drug. The court of appeal found the arresting officer was not trained or qualified as an expert in narcotic detection because he lacked Drug Recognition Expert (DRE) certification.[3] Pursuant to LSA-R.S. 14:98, the court of appeal reasoned the State was required to prove intoxication by a specific scheduled drug. In light of the lack of a chemical analysis identifying the drug, accompanied by the defendant's assertion that he had not taken any drugs, the court of appeal concluded the State's evidence was insufficient under the statute to support a conviction. The court of appeal noted the defendant denied having taken any drugs; the following factors: his car was not searched; there was no evidence that he was in possession of drugs, pills, bottles, or any drug paraphernalia; and the precise source of defendant's impairment was not established by chemical testing or expert testimony. Under the circumstances, the court of appeal was unable to conclude the trooper's identification of the intoxicating substance as a narcotic was sufficient to support a conviction under the statute and reversed. State v. Kestle, 07-49 (La.App. 5 Cir. 6/26/07), 963 So.2d 1023.
The State applied for writ of certiorari asking this court to reinstate defendant's conviction and sentence. The State's application was granted to clarify the extent to which testimony of behavioral manifestations of intoxication alone can pass sufficiency review in the context of narcotics-only intoxication and to clarify whether the lay opinion testimony of an officer is sufficient to convict without additional expert testimony. State v. Kestle, 07-1573 (La.4/18/08), 978 So.2d 336.

DISCUSSION
The State contends the court of appeal misapplied the Jackson v. Virginia standard and substituted its judgment for that of the trier of fact by accepting a hypothesis of innocence that the trier of fact reasonably rejected specifically that the defendant was wearing sandals, was tired from working ten hours, and suffered from back problems. The State notes there were clear behavioral manifestations of intoxication in this case: the defendant could not maintain his balance, his pupils were tightly constricted, and he was cognitively impaired. The video in evidence establishes the defendant's performance on the field sobriety tests was extremely poor in that he could not follow instructions, fell to the ground at one point, could not count his steps, nor walk heel-to-toe or stand on one leg. His performance was impaired to such an extreme that the trooper ceased the field sobriety tests because he feared defendant would hurt himself.
The State points out that defendant consented to an intoxilyzer test for alcohol, but refused a urine test for narcotics, reasonably supporting an inference that he sought to avoid chemical detection of narcotics in his system. Additionally, the *278 State argues that defendant's own statement that he consumed three beers but had not used narcotics was not credible in light of the results from the intoxilyzer[4] and horizontal gaze nystagmus test which showed he had not consumed alcohol. However, the State contends defendant did exhibit behavioral manifestations of extreme intoxication.
In reviewing the sufficiency of the evidence to support a conviction, an appellate court in Louisiana is controlled by the Jackson v. Virginia standard enunciated by the United States Supreme Court. State v. Captville, 448 So.2d 676, 678 (La. 1984). When the conviction is based on circumstantial evidence, such evidence must exclude every reasonable hypothesis of innocence. LSA-R.S. 15:438; State v. Camp, 446 So.2d 1207, 1209 (La.1984); State v. Wright, 445 So.2d 1198, 1201 (La. 1984). However, LSA-R.S. 15:438 does not establish a stricter standard of review than the more general rational juror reasonable doubt formula. It is merely an evidentiary guide for the trier of fact when considering circumstantial evidence. State v. Porretto, 468 So.2d 1142, 1146 (La. 1985). The trier of fact makes credibility determinations and may accept or reject the testimony of any witness. See State v. Tompkins, 403 So.2d 644, 647 (La.1981).
In order to convict a defendant of driving while intoxicated, the prosecution must prove the defendant was operating a vehicle and that he was under the influence of alcohol or drugs. At the time of defendant's arrest, LSA-R.S. 14:98 provided in pertinent part:
A. (1) The crime of operating a vehicle while intoxicated is the operating of any motor vehicle, aircraft, watercraft, vessel, or other means of conveyance when:
(a) The operator is under the influence of alcoholic beverages; or
(b) The operator's blood alcohol concentration is 0.08 percent or more by weight based on grams of alcohol per one hundred cubic centimeters of blood; or
(c) The operator is under the influence of any controlled dangerous substance listed in Schedule I, II, III, IV, or V as set forth in R.S. 40:964; or
(d)(i) The operator is under the influence of a combination of alcohol and one or more drugs which are not controlled dangerous substances and which are legally obtainable with or without a prescription.
(ii) It shall be an affirmative defense to any charge under this Subparagraph pursuant to this Section that the label on the container of the prescription drug or the manufacturer's package of the drug does not contain a warning against combining the medication with alcohol.
(e) The operator is under the influence of one or more drugs which are not controlled dangerous substances and which are legally obtainable with or without a prescription and the influence is caused by the operator knowingly consuming quantities of the drug or drugs which substantially exceed the dosage prescribed by the physician or the dosage recommended by the manufacturer of the drug.[5]
*279 In State v. Hightower, 238 La. 876, 116 So.2d 699, 703 (1959), this court stated that "a person is intoxicated within the provisions of the statute when he does not have the normal use of his physical and mental faculties by reason of the use of alcoholic beverages (or narcotics), thus rendering such person incapable of operating an automobile in a manner in which an ordinarily prudent and cautious man in full possession of his faculties, using reasonable care, would operate a motor vehicle under like conditions."
It has been widely recognized that intoxication, with its behavioral manifestations, is an observable condition about which a witness may testify. State v. Allen, 440 So.2d 1330, 1332 (La.1983); State v. Neal, 321 So.2d 497, 500 (La. 1975). Behavioral manifestations, sufficient to support a charge of DWI, in the absence of a scientific test, are determined on a case by case basis. See, e.g., State v. Holladay, 38,354, p. 4 (La.App. 2 Cir. 5/12/04), 873 So.2d 855, 857; State v. Landry, 01-0784, p. 5 (La.App. 4 Cir. 12/12/01), 804 So.2d 791, 794-795; State v. Anderson, 00-1737, p. 10 (La.App. 1 Cir. 3/28/01) 784 So.2d 666, 676; State v. Bourgeois, 00-1585, p. 7 (La.App. 5 Cir. 3/14/01), 785 So.2d 848, 853; State v. Iles, 96-0256, pp. 7-8 (La. App. 3 Cir. 11/6/96) 684 So.2d 38, 42. An officer's subjective opinion that a subject failed a field sobriety test may constitute sufficient evidence of intoxication to support a DWI conviction. State v. Graves, 95-0578, p. 7 (La.App. 1 Cir. 5/10/96), 675 So.2d 1141, 1145-46.
Although the court of appeal recognized these precepts apply to intoxication whether caused by ingestion of alcohol or narcotics, the court noted the bulk of jurisprudence involves alcohol intoxication which is generally accompanied by a distinctive element-the characteristic odor of alcohol on the breath. Narcotics intoxication may lack that characteristic.
While the sample of DWI cases in which alcohol is not implicated is small, the jurisprudence does not impose an expertise requirement suggested by the appellate court in this case. This court long ago found no reversible error in a trial court's determination that apparent intoxication caused by an agent other than alcohol could be the subject of lay testimony. In State v. Ryan, 122 La. 1095, 48 So. 537, 539 (1909), this court found "[t]here was no error committed by the trial judge in permitting a nonexpert witness to testify that the defendant was not `drunk' or `under the influence of dope,' as he had testified he was." The court recognized "a well-established rule that nonexpert witnesses may testify as to whether a man is drunk or sober." Ryan, 48 So. at 538.[6]
In this case, the parties stipulated that the defendant had two previous DWI convictions and that the intoxilyzer in the present case detected no alcohol in his system. Review of the trial transcript indicates the trooper testified he noticed the defendant was not in control of his body movements and his pupils were tightly constricted. The trooper described defendant's initial appearance as "extremely impaired." He was "unsteady on his feet" *280 and relied on contact with the vehicle to maintain his balance which was "very poor." Additionally, his speech was "[v]ery slurred." The trooper was required to repeat directions several times during the field sobriety tests. During the walk and turn test, defendant was unable to follow directions or maintain his balance and fell down at one point. Based on all of the trooper's observations, he estimated the defendant's level of impairment as "extreme."
The trooper testified that he has been with the state police for four years. Prior to that time he served eleven years with the Jefferson Parish Sheriff's Office during which time he was assigned to the street crimes division for four years. Although he had not received formal training on the differential determination of narcotics and alcohol intoxication, based on his experience as a law enforcement officer in narcotics he believed he could tell when people were on narcotics. He made other arrests in the past in which people were later found by chemical testing to be impaired by a narcotic substance such as marijuana, Xanax, Soma, and cocaine.
A law officer may testify as to matters within his personal knowledge acquired through experience without first being qualified as an expert. LSA-C.E. art. 701;[7]State v. Moses, 367 So.2d 800, 805 (La.1979); State v. Lowery, 609 So.2d 1125, 1128 (La.App. 2 Cir.1992), writs denied 617 So.2d 905 (1993); State v. Digilormo, 505 So.2d 1154, 1157 (La.App. 3 Cir.), writ denied, 511 So.2d 1153 (1987).
The trooper admitted that he could not identify the specific substance which caused defendant's impairment because defendant refused to provide a urine specimen for a chemical test. Defendant's claim that he drank three beers was not substantiated by the intoxilyzer test which indicated a 0.000 percent blood alcohol level or the horizontal gaze nystagmus test.
The defendant continues to argue that he was tired from working long hours, had difficulty walking on the gravel because of his sandals and had back problems. However, the defendant's reasons for poor performance on the sobriety tests were obviously rejected by the trial judge.
In this case, the trial judge had the benefit of the officer's testimony and the videotape of the field sobriety test which was introduced into evidence. The trial judge stated in reasons for judgment:
Here's the observations that I make, also. The defendant did have very slurred speech. He was generally very unsteady on his feet. He did very poorly on the heel to toe field test, specifically, he mostly did not walk heel to toe. He did not walk well when he did it. His gait was  well, his steps were as I said not heel to toe. He walked somewhat unsteadily, but his feet were in the average, the normal position, side by side as they passed each other rather than heel to toe, which may indicate that he didn't do it. He didn't know what he was doing. He made mistakes at the time, whatever, he was not able to follow instructions. And he didn't possess the ability of physical coordination to step heel to toe.
All of those things are considerations. He was not able to stand on one foot. He declined the urinalysis. And there *281 are numerous behavioral manifestations and subjective criteria to support a conclusion beyond a reasonable doubt that the defendant was operating a vehicle while intoxicated.
....
After observing all these behavioral manifestations, I feel that the defendant was critically impaired and should not have been driving. He also in addition to those manifestations hit the side of an overpass or a bridge rail or whatever they called that thing. And anybody can have an accident and do something like that when they are not impaired. But when you take all of the circumstances together, I conclude that he was driving while intoxicated and do so beyond a reasonable doubt, and I find him guilty.
The trial judge found defendant guilty of DWI third offense and not guilty on the charge of reckless operation of a motor vehicle.
In reviewing the evidence, we find it sufficient to establish the defendant was intoxicated. The testimony of the trooper clearly established defendant was severely impaired. His speech was slurred, he had trouble following directions, his balance was poor, and he fell down. Defendant's performance on the field sobriety tests was videotaped and the videotape was entered into evidence. Additionally, the defendant refused to provide a urine sample for chemical testing. While not presumptive evidence, refusal to take a chemical test is relevant evidence in a prosecution for DWI. See LSA-R.S. 32:666(A)(2)(c)[8]; State v. Washington, 498 So.2d 136, 138 (La.App. 5 Cir.1986) (refusal to take chemical test relevant in prosecution for DWI, weight of such evidence is to be determined by the trier of fact) citing City of Monroe v. High, 254 La. 362, 223 So.2d 834, 838 (1969) overruled on other grounds; cf. State v. Loisel, 01-2018, pp. 11-12 (La.App 4 Cir. 3/6/02), 812 So.2d 822, 829, writ denied, 02-0928 (5/31/02), 817 So.2d 98 (finding the evidence insufficient when the defendant refused testing and the videotape failed to confirm the level of intoxication reported by the officer).
The refusal by the defendant to submit to a urine test reasonably supports an inference that the defendant sought to avoid the chemical detection of a controlled dangerous substance in his system. The refusal, when coupled with the trooper's testimony regarding his level of impairment, the trooper's experience with individuals impaired by narcotics, and the defendant's own statement he had consumed three beers but not used narcotics or medications which proved not credible in light of the negative intoxilyzer test, is sufficient evidence to support the conviction. Further, the trial court's rejection of defendant's explanation for poor performance on the field sobriety test as not credible was well within the court's discretion.
*282 The court of appeal erred in fashioning a rule that requires expert training in recognizing intoxication due to being under the influence of a controlled dangerous substance specified in the DWI statute and requiring the State to prove that a specific controlled dangerous substance caused the intoxication. Although the trooper had no formal training in distinguishing between alcohol and narcotic impairment, he did have four years of experience with the street crimes division where he was exposed to individuals who used narcotic substances. Based on his experience, the trooper testified the defendant was impaired as a result of taking narcotics.[9] Within the context of his testimony, it was reasonable for the trial court to conclude the trooper was referring to a controlled dangerous substance specified in the DWI statute. Considering the law, jurisprudence, and the facts and circumstances of this case, we find the trial judge had sufficient evidence to conclude that the defendant was intoxicated based on the terms of the DWI statute.

CONCLUSION
For the foregoing reasons, we find sufficient evidence was introduced to enable the trial court to conclude that defendant was driving while intoxicated. Thus, we reverse the court of appeal decision and reinstate the trial court conviction and sentence.
REVERSED.
Retired Judge LEMMIE O. HIGHTOWER, sitting ad hoc for CALOGERO, C.J., recused.
NOTES
[1] Retired Judge Lemmie O. Hightower, sitting ad hoc for Calogero, C.J., recused.
[2] 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).
[3] The trooper acknowledged that he was not DRE certified. The DRE training programs are designed to provide participants with the expertise to determine whether a person is under the influence of one or more drugs in seven broad categories: (1) central nervous system depressants (e.g., Valium, Xanax); (2) central nervous system stimulants (e.g., cocaine, methamphetamine); (3) hallucinogens (e.g., LSD); (4) dissociative anesthetics (e.g., PCP); (5) narcotic analgesics (e.g., opium, heroin); (6) inhalants (e.g., Toluene, plastic cement); and (7) Cannabis. See The International Drug Evaluation and Classification Program, http://www.decp.org.
[4] He blew .000 indicating there was no alcohol in his system.
[5] 2007 La. Acts, No. 227 rewrote subparagraph (A)(1)(e) to provide as follows:

(e)(i) The operator is under the influence of one or more drugs which are not controlled dangerous substances and which are legally obtainable with or without a prescription.
(ii) It shall be an affirmative defense to any charge under this Subparagraph pursuant to this Section that the operator did not knowingly consume quantities of the drug or drugs which substantially exceed the dosage prescribed by the physician or the dosage recommended by the manufacturer of the drug.
[6] The Ryan decision involved receipt of stolen goods, but has been cited for justifying the admissibility of an officer's testimony that a defendant appeared to be under the influence of alcohol in a DWI case based on the defendant's performance on field sobriety tests. See State v. Hight, 35, 621, p. 6 (La.App. 2 Cir. 3/1/02), 810 So.2d 1250, 1256, writ denied, 02-1181 (La. 11/22/02), 829 So.2d 1036.
[7] LSA-C.E. art. 701 provides:

If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are:
(1) Rationally based on the perception of the witness; and
(2) Helpful to a clear understanding of his testimony or the determination of a fact in issue.
[8] LSA-R.S. 32:666(A)(2)(c) provides as follows:

(c) Evidence of his refusal shall be admissible in any criminal action or proceeding arising out of acts alleged to have been committed while the person, regardless of age, was driving or in actual physical control of a motor vehicle upon the public highways of this state while under the influence of alcoholic beverages or any abused substance or controlled dangerous substance as set forth in R.S. 40:964. Additionally, evidence of his refusal shall be admissible in any criminal action or proceeding arising out of acts alleged to have been committed while the person under twenty-one years of age was driving or in actual physical control of a motor vehicle upon the public highways of this state after having consumed alcoholic beverages. However, such evidence shall not be admissible in a civil action or proceeding other than to suspend, revoke, or cancel his driving privileges.
[9] The DWI statute, LSA-R.S. 14:98, supra, references Schedules I-V as set forth in LSA-R.S. 40:964. Repeated references to narcotics are made in LSA-R.S. 40:964. See Schedule III(D), Schedule IV(A) and Schedule V(A).